

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DSS:CHB
*271 Cadman Plaza East*
*Brooklyn, New York  11201*

June 18, 2012

<u>By Hand-Delivery & ECF</u>

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  <u>United States v. Jamel Rosa</u>
            <u>Criminal Docket No. 09-519 (NGG)</u>

Dear Judge Garaufis:

      The government submits this letter in advance of the defendant's sentencing and in response to the sentencing letter filed by the defendant in January 2012.  For the reasons stated below, the Court should impose a sentence at the high-end of the applicable Guideline range.

I.    <u>Background</u>

    A.    <u>The Bird Gang</u>

      Beginning in 2007, law enforcement agents began investigating a series of armed robberies of commercial establishments in Brooklyn.  These robberies matched a pattern in which a small number of individuals wearing clothing that concealed their faces would enter a store, display a firearm, and demand money.  Law enforcement agents ultimately identified a violent criminal organization known as the "Bird Gang" that was responsible for these armed robberies.  On May 14, 2006, members of the crew committed two such robberies and used a firearm to bludgeon the store owner repeatedly in the head when he attempted to stop them.  The perpetrators of this robbery were later charged for those offenses. <u>See</u> <u>United States v. Kissone Frederick</u>, 09-CR-258 (KAM).

    B.    <u>The December 5, 2006 Attempted Armed Robbery</u>

      On December 5, 2006, three members of the Bird Gang attempted an armed robbery of a cellular telephone and

electronics store on Franklin Avenue in Brooklyn. One of the individuals (the defendant) stood guard by the front door of the store as two others (Cordero McBean and Caswell Senior) entered the store and demanded money. One of them produced a firearm, used the weapon to bang on the store counter's bullet-resistant glass, and then unsuccessfully tried to enter the back of the store. The three individuals fled and jumped into a car waiting nearby.

The attempted robbery was captured by the store's video surveillance cameras. The video clearly depicts one of the robbers brandishing a firearm. See Video of Robbery at 1:49 (attached as Ex. A).

C. The Subsequent NYPD Investigation

On December 6, 2006 – the day after the robbery – officers with the New York City Police Department (NYPD) located the automobile that fled the scene and arrested the two men inside, McBean and Marvin Black.

Both McBean and Black were interviewed about the attempted robbery. McBean admitted that he was involved and identified the three other individuals as "Marvin Black, Crash, and ... Casanova." See Statement of McBean (attached as Ex. B). In his statement, McBean claimed, among other things, that he was the driver of the vehicle, that the firearm was a "bebe [sic] gun," and that after the robbery he "went straight to church and prayed [for] forgiveness." Black initially denied any involvement in the attempted armed robbery. He later acknowledged his participation and confirmed that the weapon was a firearm.

On December 12, 2006, NYPD officers detained Senior, but he declined to make a statement and was released. Shortly thereafter, there was an exchange of gunfire outside the home of one of McBean's associates. No one was injured in the shooting. NYPD officers later recovered a firearm from the scene of the shooting, and neighbors reported damage as a result of the gun fire. According to witnesses, the shooting stemmed from McBean's statement to the NYPD that Senior was involved in the attempted robbery.

On or about December 16, 2006, McBean was shot and killed outside a bowling alley in Brooklyn. No one has been arrested or charged with McBean's murder.

D.  **The Federal Investigation and Interview of Rosa**

Beginning in or about 2008, the Federal Bureau of Investigation began its own investigation. On June 25, 2009, FBI agents interviewed the defendant at the New York State Green Correctional Facility in Coxsackie, New York, where he was serving a state sentence for another armed robbery that he had committed with Senior. Rosa agreed to speak with the agents and provided information regarding McBean's murder, the shooting that preceded McBean's murder, and the December 6, 2006 attempted armed robbery. The agent's notes and report of that interview confirm that Rosa referred to the weapon that was used in the attempted armed robbery as a "gun," not a "BB gun." See FBI 302 and Notes (attached as Exhibit C).

E.  **The Defendant's Post-Interview Phone Calls**

After the interview, the defendant called his family and told them about his interview with federal agents. See Transcripts of Telephone Calls (attached as Exhibit D). During those calls, the defendant admitted that he had spoken with the agents and provided them with information. He made no claim that agents had violated his rights or that he refused to speak with them.

F.  **The Defendant's Federal Prosecution**

In July 2009, the defendant was indicted for the attempted armed robbery of the store and unlawfully using a firearm in connection with that robbery. See 18 U.S.C. §§ 1951 and 924(c). He was brought into federal custody in August 2009. In February 2010, he moved to suppress his statements to the agents. His motion was supported by an affidavit in which Rosa claimed, among other things, that the agents repeatedly violated Rosa's rights, that Rosa repeatedly attempted to end the interview, and that Rosa provided no information to the agents about anything.

In March 2011, the Court held a suppression hearing. At the hearing, Special Agent Wayne Jacobs testified that he had advised the defendant of his rights at the beginning of the interview and that the defendant orally waived those rights. Among other things, Agent Jacobs testified that Rosa denied any involvement in McBean's murder, admitted that he was present at the shooting that preceded McBean's murder, and acknowledged that he was involved in the attempted armed robbery that preceded both the murder and the shooting. See Hearing Tr. at 27 (attached as

Exhibit E). Specifically, Rosa stated that "there was a gun involved in the robbery." Id.

The correctional officer who supervised the interview also testified at the hearing. Among other things, the officer testified that, contrary to the assertions in Rosa's affidavit, Rosa did not attempt to terminate the interview and that the agents and Rosa had a calm and lengthy conversation. See id. at 7-12.

### G. The Defendant's Guilty Plea

Shortly after the hearing on the defendant's suppression motion, and before the Court ruled on Rosa's motion, Rosa pleaded guilty to the attempted robbery of the store. In the plea agreement, the government estimated the following:

- the defendant's base offense level would be level 20,

- the defendant would be subject to a five-point enhancement for the use of a firearm during the robbery, see U.S.S.G. § 2B3.1(b)(2)(C);

- the defendant would also be subject to a two-point enhancement for obstruction of justice based on his false affidavit, see U.S.S.G. § 3C1.1; and,

- the defendant would be eligible for a two-point downward adjustment for acceptance of responsibility based on his guilty plea, see U.S.S.G. 3E1.1(a).

These estimates produced a total offense level of 25. The government further estimated, based on the criminal history known to the government at the time, that the defendant was in Criminal History Category III, which produced an advisory sentencing range of 70-87 months' imprisonment. In the plea agreement, the defendant waived his right to appeal or otherwise challenge his conviction or sentence if the Court sentenced him to 120 months or below.

### H. The Pre-Sentence Investigation Report

In November 2011, the Probation Department prepared a pre-sentence investigation report ("PSR"). That report confirmed the offense level calculation in the government's plea agreement. However, the Probation Department identified another prior criminal conviction for the defendant involving another armed robbery that placed him in Criminal History Category IV. The

4

Probation Department therefore concluded that the defendant's advisory sentencing range was 84 to 105 months' imprisonment.

## II. The Defendant's Sentencing Arguments

In January 2012, the defendant filed a sentencing memorandum requesting a sentence of 45 months. Among other things, the defendant made the following claims: (1) a "BB gun," and not a firearm, was used in the robbery, and thus a three-point enhancement is appropriate; (2) his affidavit in support of his suppression motion was accurate, and not false, and thus he should not receive a two-point enhancement for obstruction of justice; (3) even absent a government motion, he is entitled to a three-point reduction for acceptance of responsibility; (4) his 2005 conviction should not count for purposes of his criminal history because he was adjudicated a "Youthful Offender" by New York State; and (5) the Court should give him credit for the time he spent in state custody on another robbery. The defendant also makes other arguments in support of a lesser sentence, including his family circumstances, his asthma and psycho-social problems, his incarceration at the Metropolitan Detention Center, and his receipt of his GED in 2006.

## III. The Government's Response

The Court should impose a sentence at the high-end of the applicable Guideline range. Defendant's arguments regarding the Guideline calculation are without merit.

### A. The Firearm Enhancement is Proper

With regard to the possession and use of a firearm during the attempted robbery, Rosa acknowledged that he and his associates used a firearm -- not a "BB gun" -- during the robbery when he spoke with Agent Jacobs in June 2009 and that he was present when Senior and McBean exchanged gunfire after the robbery. Although Rosa now seeks to fault Agent Jacobs for not acquiring more information about the firearm during his interview, he clearly did not qualify his admission in any way during the interview. Moreover, given Rosa's own participation in a shooting against McBean after the robbery, it is remarkable that Rosa now asks the Court to credit McBean's facially ridiculous post-arrest statement to the NYPD that the crew used a "bebe gun" and then McBean went to "church" afterwards. Rosa's claim is even more absurd given that he previously possessed a firearm in every other act of criminal misconduct that is referenced in his PSR, including his May 2006 conviction for the unlawful possession of a firearm stemming from an incident when

5

he was with Senior and accidentally shot him in a car in February 2006, see PSR at ¶¶ 32-33; his October 2008 robbery conviction for a March 2007 armed robbery that he and Senior committed together, see PSR at ¶¶ 34-35; and his June 2006 conviction for an armed robbery that he and another person committed in May 2005. In sum, all credible evidence indicates that Rosa and the others used a firearm during the instant offense.

      B.    The Obstruction Enhancement is Proper

Similarly, Rosa obstructed justice in this prosecution by knowingly submitting a false affidavit in support of his suppression motion. The applicable Guideline cites "providing materially false information to a judge" as an example of conduct to which the enhancement applies, but notes that:

> in cases involving false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory, and thus not all inaccurate testimony or statements necessarily reflect a wilful attempt to obstruct justice.

See U.S.S.G. § 3C1.1 Note 4(F) and Note 2; compare United States v. Lincecum, 220 F.3d 77 (2d Cir. 2000) (applying enhancement where defendant's affidavit was expressly contradicted by hearing testimony) with United States v. Aqueldo, 414 F.3d 345 (2d Cir. 2005) (rejecting enhancement where defendant's affidavit properly raised legal challenge based on defendant's alleged invocation of right to counsel). Numerous courts have concluded that submitting a false affidavit constitutes obstruction under U.S.S.G. § 3C1.1. See, e.g., United States v. Hernandez-Ramirez, 254 F.3d 841, 843-44 (9th Cir. 2001).

Here, in his affidavit, Rosa claims that he did not make any statements to law enforcement and that the agents repeatedly violated his rights during the interview and continued the interview after he clearly and unequivocally invoked his right to remain silent. See Affidavit (attached as Exhibit F) at ¶ 27 ("I ... refused to answer their questions."); Id. at ¶ 33 ("I had no 'input' to give"); Id. at ¶ 42 (claiming that the agents "ignore[d] my request for an attorney and request to remain silent"). At the hearing, Agent Jacobs testified that Rosa voluntarily spoke with him about three events: McBean's murder, the shooting involving Senior and McBean that preceded

6

the murder, and the attempted armed robbery. Agent Jacobs's testimony that Rosa voluntarily spoke with him and provided him information was corroborated by the correctional officer who was present during the interview. Moreover, Rosa's account in his affidavit that he provided no information to the agents and instead was subjected to repeated abuses is belied by Rosa's accounts of the interview to family members shortly thereafter.

In an effort to avoid the clear mandate of U.S.S.G. § 3C1.1, Rosa attempts to refocus the Court's attention and parse the statements in his affidavit by, among other things, claiming that his affidavit merely contested Agent Jacob's account of the interview and that many of Rosa's assertions in his affidavit were actually corroborated by Agent Jacob's and the correctional officer's account. However, the fundamental assertion in Rosa's affidavit was that he gave no information to the agents and that the agents violated his constitutional rights, an assertion that is belied by the evidence in the case and that makes an upward adjustment for obstruction appropriate.

### C. A Three-Point Adjustment for Acceptance of Responsibility is Improper

Although the Court could reasonably decline to award Rosa any downward adjustment for acceptance of responsibility in light of his post-indictment obstructive conduct, see U.S.S.G. § 3E1.1, comment n.4; United States v. Kumar, 617 F.3d 612 (2d Cir. 2010); United States v. Giwah, 84 F.3d 109, 112 (2d Cir. 1996), the government's post-hearing plea agreement declined to provide the defendant with the opportunity to gain the benefit of "the third point." See U.S.S.G. § 3E1.1(b); United States v. Sloley, 464 F.3d 355, 360 (2d Cir. 2006); United States v. Lee, 653 F.3d 170 (2d Cir. 2011). Thus, the Court should award the defendant no more than two points for acceptance of responsibility.

### D. Rosa's 2005 Conviction Should Count Towards His Criminal History

Rosa also contends that he should not be assessed any additional criminal history points for his 2005 armed robbery conviction because he was adjudicated a Youthful Offender and was only sixteen at the time of the offense. Yet the Second Circuit is clear that such convictions do qualify for purposes of a defendant's criminal history under the Guidelines. See United States v. Matthews, 205 F.3d 544 (2d Cir. 2000); see also United States v. Parnell, 524 F.3d 166 (2d Cir. 2008); United States v. Pereira, 465 F.3d 515 (2d Cir. 2006); United States v. Jones, 415 F.3d 256 (2d Cir. 2005). In that crime, Rosa and an associate

7

used a firearm to rob someone. Although he was originally sentenced to probation, he violated that probation within a year by apparently possessing a firearm again and then using it to accidentally shoot Senior. The court sentenced him to a one-year term of custody. Two criminal history points are therefore properly assessed for this offense. See U.S.S.G. § 4A1.1(b).

Based on the foregoing, the government submits that Rosa's applicable Guideline range is 84-105 months' imprisonment, which is based on: a base offense level of 20, a five-point enhancement for the use of a firearm; a two-point enhancement for obstruction; a two-point deduction for acceptance; and a Criminal History Category of IV.

        E.    Rosa Should Not Receive Any Credit for Any Time That He Served for Another Armed Robbery

Rosa also contends that the Court should reduce his federal sentence for the instant armed robbery because he committed another armed robbery in March 2007 and was convicted for that offense and serving a state sentence when he was indicted for the December 2006 armed robbery. Rosa further contends, without any support, that his federal prosecution was deliberately delayed until after his September 2009 release date for that state offense. In short, Rosa appears to claim that the Court should reduce his federal sentence because he already served roughly two years in state prison for a different armed robbery that he committed after he committed the instant offense and because he is now on parole for that crime. That Rosa was only required to serve a brief two-year sentence for an armed robbery that he committed after the instant offense should not be a reason for the Court to downwardly depart under U.S.S.G. § 5G1.3(c).

        F.    The Sentencing Factors in 18 U.S.C. § 3553(a) Counsel In Favor of a Lengthy Sentence

A sentence at the high-end of the applicable Guideline range is appropriate in this case because the defendant and other members of his gang were involved in numerous armed robberies of commercial establishment in Brooklyn. One of the defendant's co-conspirators faces a sentence in excess of 32 years, see United States v. Kissone Frederick, 09-CR-258 (KAM), while another co-conspirator was sentenced to 84 months in prison. See United States v. Pedro Grullon, 10-CR-410 (KAM). To the extent that the defendant suggests that a lesser sentence might be appropriate based on his family circumstances and various social and medical issues, there is nothing to suggest that the defendant's

circumstances here are in any way extraordinary.  See <u>United States v. Faria</u>, 161 F.3d 761 (2d Cir. 1998); <u>United States v. Smith</u>, 331 F.3d 292, 293-94 (2d Cir. 2003); <u>United States v. Rivera</u>, 192 F.3d 81(2d Cir. 1999).  Moreover, the defendant's claim that his youth makes a lesser sentence appropriate is belied by his extensive and repeated criminal conduct from 2005 to 2008.  As noted above and in his PSR, the defendant regularly and repeatedly possessed and used firearms, often to commit robberies.  When faced with prosecution by the federal government, the defendant elected to file an outlandish affidavit that was rebutted not simply by the agent and correctional officer who testified against him but by the defendant's own telephone conversations with family members.  A sentence at the high-end of the applicable Guideline range is necessary in this case in light of the "history and characteristics of the defendant" and "the seriousness of the offense."  <u>See</u> 18 U.S.C. § 3553(a)(1) & (2)(A).  Similarly, it will promote and provide "adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant."  <u>See</u> 18 U.S.C. § 3553(a)(2)(A), (B) & (C).

IV.     <u>Conclusion</u>

For the reasons stated above, the Court should impose a sentence at the high-end of the applicable Guideline range.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

By:     _____/s/_____
       Carter Burwell
       Assistant U.S. Attorney
       (718) 254-6313

cc:     Clerk of Court (by ECF w/o attachments)
       Michael Hueston, Esq.